May it please the Court, my name is William Carpenter and I represent ONRC Action and Plaintiff Appellant in this matter. And sitting at counsel's table with me is Ms. Charlene Kosky, who is amicus counsel for the Hoopa Valley Indian Tribe, but she will not be arguing. And this really is a case where I think there are four reasons where the court has to remand the case back to the district court. Two of them are factual and two of them are legal. And I realize this is in reverse order from the original briefs, but it also is the simplest way that the court could dispose of the matter, and that is to find that there are intervening uses along a 20-mile section of the water transfer, beginning in the other watershed called the Lost River Watershed. And if I may, the maps are very comparative. Do you agree that we would not even get to the water transfer issue unless we agree that there has, in fact, been a discharge into navigable waters under the Supreme Court's case of Makosuke Tribe of Indians? Yes. We'll just call it the Indians case. Correct, Your Honor. Unless you get past that, we don't get to the water transfer issue, do we? Well, except the posture of the case is very important here in that that is what's called the meaningfully distinct test. It's a very complicated test, at least at the courts that have reviewed it. Yes and no. I wrote the Los Angeles County Sanitation District. I'm very familiar with that case. Yes, Your Honor. And I know what the Supreme Court thinks about the issue, and in this case my understanding is that you all had stipulated, let me see if I can get the record here, that in fact the 8.5-mile-long outlet from the lower Klamath Lake to the Klamath River is what we're talking about. Is that incorrect? That is incorrect, Your Honor. Okay. We really never stipulated that. In the court below, that intervening transfer was argued to be 2 to 5 feet long. The government themselves argued that it was 2 to 5 feet long, along with the interveners, and we argued that it was the 20-mile length. Let me go back to Judge Smith's question. If we, and this has been briefed so it's no surprise, if lower Klamath Lake and Klamath River are not meaningfully distinct bodies of water, then the water transfer rule would not apply, correct? I believe the water transfer rule, the position is it would apply, and the meaningfully distinct test is a different way to get to the term of addition. Well, I thought the government's position, but don't correct me, was that the water transfer rule only applies when water is moving between meaningfully distinct bodies of water, and then you look at the question of whether or not during that movement somebody has done something to the water other than just move it along. But if it's only one body of water, they haven't done anything to do an addition, have they? No, you're entirely correct. Because the Act only outlaws the addition of a pollutant to something. They haven't – they didn't add the pollutant initially, so your argument has got to be they added it by the addition occurred by them moving it to the second body of water. And if they're not meaningfully distinct, we don't go anywhere in this case. And so my question is, the district court didn't decide this issue. That's correct, Your Honor. But it would decide the whole case if the district court found that they were not meaningfully distinct, and as I read its findings, it sure was headed there. Should we decide that issue if we think it is important, or should we remand it to the district court to decide that issue? Well, I think you should remand it, just because there was not a factual record really developed on it. Well, there is a fact – see, my view is there's a fully developed factual record, but I'm not sure either party knew at the time they were – what they were supposed to put in the record. So is that true? Certainly. And if I may – Are you deprived in any way of the ability to make your case in the district court to put in evidence that these were meaningfully distinct bodies of water? I'm going to stumble over that phrase every time I say it. Yes. I think if you were to – let me clarify a little bit. The government now has raised that issue supposedly because the waters were found to be tributaries to the Klamath River after the L.A. County case. Regardless of whether the – Well, put aside the legal issues. We can deal with the legal issues. Okay. My question is, is this record fully developed sufficiently for us – because we can – we can uphold the judgment on any basis that the record allows us to. Is this record developed in us enough for us to reach that issue? And if not, why not? Okay. I don't believe it is, Your Honor. And we really have only a few glimpses of insights on what courts have determined is this Supreme Court condition of meaningfully distinct. So just to be sure I understand your answer to his question, you're saying that you did not have an opportunity to adequately present information that would help the court make a determination of whether this was a meaningfully distinct body. Is that correct? That's – exactly, Your Honor. And what kind of things would you be putting in that you did not already put in? Certainly, Your Honor. The lower district of Friends of the Everglades I set out a ten-factor test on what meaningfully distinct is. It was kind of the first case in the Everglades area that had to readdress this. Was that a ten-factor test, or is that a laundry list of what they considered? Yes, it was. And the judge did say that they weren't saying all of them had to be met, and it was not saying that anyone should be giving a higher priority to the others. Or that other factors might in a different case. Exactly, Your Honor. So that's why I have trouble seeing it as a ten-factor test. This is one ten-factor test. Here's the ten things I thought of. Here's the ones that are applicable to this case, but other cases may have different. Right. And a couple of them did. One was the pumping of the – the direction of the pumping and that the pumping had to be uphill to get to the navigable water. A couple others were chemical inconsistencies between the two waters, biological inconsistencies. Historically, though, don't we know that this was one body of water? No, Your Honor, we don't. Before people started putting in canals and doing other things? 110 years ago, yes, Your Honor. That's my question. So nobody disputes – That is one factor. Nobody disputes that it was a – before people started messing around, this was one body of water. Yes, Your Honor. Isn't it – why isn't that the appropriate test? Well, we raised in the district court that the end of the water body was no longer the end of the water body. They had cut a new channel for the last three-quarter mile to a mile. They had added all these pumps. So it was not a natural system at all. And taking your point that it's not one now, is that the appropriate test? Well, the fact that they were one water at one time is also one of the ten factors that the lower court in Friends of the Everglades put into – But we're looking at a lower court decision. Correct. My question – I don't think that should be the only factor. You know, meaningfully distinct is if you have a glass of clouded water and you have a glass of clear water, I think it's easily to find that those would be deemed meaningfully distinct. Now, it doesn't – Wait, wait, wait, wait, wait. So you're saying after a rainstorm and the water gets a little cloudy, that changes the definition of whether it's a meaningfully distinct body of water? Well, under the Clean Water Act, I think it would, Your Honors, because it doesn't say we're just checking the waters when it's a very clear day out and the water coming in or the polluter-carrying system is at its best. You have to look at when it's at its worst as to whether they are meaningfully distinct. How does the condition of a single glass of water speak to the origin or nature or the relationship between the two sources of the water? I mean, go to the L.A. County case, nobody has attested, as far as I know, that the condition of the water, that the chemical compositions were identical when one came in from this channel and hits the mainstream, yet the Supreme Court says, look, it's all the same body of water, and that's not turning on the chemical composition. Well, except it wasn't a tributary in the L.A. County case, Your Honor. It was the L.A. River, and some of it was a coverted area, a concrete coverted area, and then that ran into a natural... And it may pick up other things along the way, but the Court's concern was whether the bodies of water were distinct, not the composition of the particular glass that you're able to take at given points. That's my understanding as well, so I'm very interested in what the quality of the water has to do with a lot of other things, yeah, but as to meaningfully distinct what that has to do with that. Right. Well, if we go back to Miccosukee, where the term was created, that same case created an exception or an additional liability requirement that point sources don't have to add the pollution, they can just carry the pollution through. And I think because of that, the Supreme Court said this is really a big change. But, counsel, forgive me. Sure. This is... Your line of thought is very different, from my perspective, to the Indian case, and certainly the L.A. Unified, or L.A. Los Angeles County case, because in those cases, you were talking about somebody that's testing a point source at one end of, say, a lake, and another end of the lake. The Supreme Court says, hey, it's the same body of water. That's not a point source. It's not going to change anything. In the L.A. County case, we had all these things coming, hundreds of spouts of things coming from cities and streets and so on, from end-to-cement culverts, and the Supreme Court says, no, if you take something from one end of the cement culvert and put it to another end of the culvert, there's no difference. They completely misread what we said, because we were talking about the other stuff. So we then reissued the case, made clear that we were talking about those other things, held there was liability, and sent it back to the district court to determine who was responsible for correcting it. The Supreme Court denied cert. So we're still dealing here, as I understand it, with not the water quality. I mean, ultimately, that gets factored into this, but whether this is, in fact, one body of water in this 8.5-mile period or length. Isn't that the issue here on the first point? The question is, is the drain meaningfully distinct from the Klamath River? Not that it's meaningfully distinct in and of itself. And it's like tributaries coming in, and I think the perfect example would be the Green River flowing into the Colorado River. I don't know if you've ever seen that. The Colorado River runs very muddy. The Green River has a green hue to it when it comes in, and everything downstream is brown. Now, are those meaningfully distinct? They probably are because the two have many characteristics that are not similar between the two bodies of water, and that's what I think we have here with the Klamath Drain, that it is no longer the Klamath Straits. It's not called the Straits anymore. It's called the drain because it picks up many ñ it has many different characteristics than the Klamath River, and that's what the Supreme Court was looking for. Would you agree, though, that you are, with your approach on this, that you are trying to expand substantially the definition that the Supreme Court put on this? No, Your Honor. I really think what's happening is this case is much like the Miccosukee case because the concern the Court had, and I would like to reserve a little time, maybe four minutes, I apologize, is that they were concerned that the levees and the groundwater were so porous around Lake Ochecobee that really what was happening is these pumps that were pumping the water back into the lake from these canals might only be pumping Lake Ochecobee water through the systems. So that's not the situation why we're somewhat ñ that was what triggered the meaningfully distinct and the protection. Here we have pollutants being pumped from 40 miles away, another watershed, that it's much more like almost a sewage line coming into and out of the water that happens to be so large and the government was able to go ahead and use a past riverbed to create this, that that is why we really think the meaningfully distinct test has to be taken to another level rather than just ñ But it is ñ you're asking for a new level. You agree that this is an extension of the Supreme Court's doctrine in a new direction or a more inclusive direction. It's certainly a refinement. Again, is it ten factors, is it three factors? Catskills Mountains and Dubois said if you're pumping water between two watersheds, they're distinct. If the Catskills case mentioned if it was pumping it uphill, it's distinct. So I think it does have to come back. And the other thing was, is that the 20-mile intervening use is probably correct. And while the Bureau doesn't believe that, they are not the agency that created the rule, so you don't need to give them any deference. So on that argument, are you conceding the validity of the rule but claiming that under the rule there is nonetheless a violation? No, Your Honor. I think what I'm saying is that if you find the exception, you really don't have to reach the question of whether the rule is valid. That's what I'm saying. I'm saying ñ Concede that the rule is valid. That argument would assume the rule is valid and then ñ Not necessarily. And then say, but what's happening here is what is forbidden by the rule. No. I think I would say ñ Then I misunderstand what you're saying. I'm sorry. The rule would not even be addressed because you would not have to decide the validity of the rule if you found that the transfers were not even, because of their exception, were not even within the rule to start with. Okay. Because the exception is when intervening uses come in. Exactly. So that's part of the rule, isn't it? It is. Okay. I understand. Yeah. You see my ñ an exception to an exception. Yeah. And if we like, it sounds like the Court has a real good feel for what the whole basin looks like from the maps. One map I will point to is ñ The maps were not the clearest map I've ever seen. I know. We really needed an easel chart here, didn't we, Your Honor? There is on page 132 on the intervening uses again, there is this map here that shows a number of different uses from the canals and shows the Kalamath Drain going much further ñ that would be my excerpt from the record ñ going much further into the Kalamath Wildlife Refuge than the courts, than the government would even contest to. The other thing I wanted to get at is the eight-and-a-half-mile section. Even if you were to assume that was the correct section to use, that Judge Karras's opinion vacated that section from being ñ the rule from applying to that section. And it is a national rule, and he vacated it in non-natural circumstances. Say that again? Judge Karras's opinion did what? It vacated the rule according to Rapanos and his own opinion. And what it basically says is he relied on the Du Bois case where he says when they're not really navigable waters anymore because they've been taken out of the whole natural scheme of what a navigable water is. And along those lines, when it runs through these pipes and large pumps, then it really is no longer navigable. He required it navigable in nature rather than this constituency of just the content of it being navigable. Why don't I reserve the rest of the time? Thank you, Your Honors. May it please the Court, I am David Shilton, representing the Bureau of Reclamation. I plan to share five minutes of my time with Counsel for Intervenor Klamath Water Users Protective Association, Mr. Jacobs. OMRC here is claiming that the Bureau of Reclamation is discharging pollutants to navigable waters, that being the Klamath River, by the Klamath Strait Strain. And, of course, discharge of pollutants is defined in the act to mean an addition of pollutants to navigable waters. And so there was no addition of pollutants to navigable waters here for two independent reasons. One is no meaningfully distinct waters are involved. And two, even if meaningfully distinct waters are involved, what you have here is the Bureau simply conveying water, conveying water of the United States, which happens to have pollutants in it that came in upstream to another water body, and under EPA's water transfer rule, that is not considered an addition. Can we talk about the transfer rule a bit? And I know your opponent didn't have much opportunity to. At least one court in the Southern District of New York, I know the case is on appeal, has, under an APA review, has invalidated the rule. What should we do with respect to the water transfer rule in this case? Should we reach its validity? Your opponents do attack its validity. Should we wait for the Second Circuit, or should we dispose of this case? Is there a way that we should decide this case without looking at the validity of the water transfer rule? Right. So if you decide the case on the basis of the meaningfully distinct, if there's no meaningfully distinct, then you never need to reach the water transfer rule issue, because that assumes that you have two meaningfully distinct bodies of water. If you don't have that, then the rule never comes into play. But on that issue, my concern is the same question I put to your opponent, which is this. The judge made no findings on that. I'm not sure anybody asked the judge to. Am I correct in thinking that nobody asked the judge to find that these were just one body of water? That's correct. And we've got a big record. Yes. And I love to look at big records, but wouldn't the appropriate thing to do to be asked the district judge to decide that issue? No, because the parties did focus on whether the Klamath Straits drain was a water of the United States. And in the course of doing that, both parties had adequate opportunity to submit lots of information about the nature of the Klamath Straits drain. And in the course of deciding that the Klamath Straits drain is a water of the United States, the lower court found, and this is not challenged on appeal, that the Klamath Straits drain acts as a tributary and that it reestablishes a hydrologic connection, which existed historically and was simply interrupted by developments in the 20th century. And so the non-disputed facts are enough for this court to determine on that basis that these are not meaningfully distinct water bodies because the Klamath Straits drain is simply a tributary of the Klamath River. And that the factor that the Supreme Court has focused on in those cases is, you know, what would happen if you took out the man-made changes? Would these waters naturally flow together? And the lower court here clearly found that historically, if you take out the man-made changes, the Klamath Straits and the lower Klamath Lake basically were like a slew of the Klamath River. In the spring, when the Klamath River flooded, water came through the Straits into the lower Klamath Lake. In the fall, when the Klamath River went down, they went back again. And there was enough water there that early pioneers had steamboats going back and forth. And so that connection was broken by a railroad embankment and other developments. But the Klamath Straits drain basically reestablished that. And if you took out all the man-made improvements, the waters would flow together. I'm having some difficulty with the Southern District of New York decision in this sense. It invalidated the rule on APA grounds. And in this case, we would not be looking at the procedure by which the rule was adopted, but rather whether it deserved Chevron deference and was reasonable. Are the analyses different? I think they are. In this case, it's exactly in the posture of the 11th Circuit case, the Friends of Everglades versus South Florida Water Management District, in that a citizen group brings a citizen action under Section 505 of the Clean Water Act and says, you know, there's a discharge of pollutants here without a permit, and we want the court to order a permit. And so then the court has to look at, is there a discharge of permit? Is there a discharge of a pollutant? And so here we say there are two reasons there is no discharge of a pollutant, and one of them is this is a water transfer under EPA's rule. I understand your position. I guess I was asking a slightly different question, which is that, is it possible under our normal Chevron review of rules or our review of rules to see whether they are there, whether the statute is ambiguous and whether or not the rule is a reasonable interpretation of the statute, to have a reasonable rule that was nonetheless adopted in an improper procedural manner? Yes, I think. In other words, we might only look at the reasonableness of the rule, but it might well turn out that the method by which it was adopted was improper. Right. No, I think that is possible, and, you know, it's important that Judge Karras in the Southern District of New York found he agreed with EPA that the language of the statute is ambiguous, and you go to Chevron Step 2. Under Chevron Step 2, he found that some of EPA's rationales were not convincing to him. We disagree with that, and we've appealed that, but it really is almost a procedural defect that he found, that failure to give meaningful explanations to some of the reasons why EPA determined to come out as it did in interpreting an ambiguous statute. See, that's why I'm having some difficulty. In my mind, I can separate procedure from the substance, but the Southern District rule decisions seem to be I'm applying Chevron deference and I'm getting to Step 2 and I'm failing. And so why doesn't that reasoning apply to us if we look at the validity of the rule? Well, first of all, it's just a district court opinion. Right. The Eleventh Circuit is just the Eleventh Circuit. True. We just have to figure out which one we think is right. Right. And obviously, we think the Eleventh Circuit decision is a better reason. But besides that, the Eleventh Circuit decision did come in a similar context to this, of a citizen suit where the government said, look, this is just a water transfer, and under EPA's rule, water transfers do not discharge a pollutant, and so the court looked at the rule and it fulfilled the Chevron review. I think Judge Karas in New York undertook a very, very intrusive review under Chevron Step 2, more intrusive than Chevron warrants, and I think the approach of the Eleventh Circuit is more consistent with Chevron and that this court should follow that approach. But so just to finish up on the meaningfully distinct, I think the Supreme Court's decision in the L.A. County case did clarify matters somewhat after the district court decision had come down here to show that if waters are just flowing naturally as they would, that this is not a discharge of pollutants to which the act applied. And I think the fact that counsel has said that, you know, the Green River, where it flows into the Colorado, that they're meaningfully distinct. I mean, what that implies is that every tributary that comes into a main stem, if it's somehow chemically slightly different, it's going to require an NPDES permit. I guess it would be the National Park Service there would have to get an NPDES permit for the Green River allegedly discharging to the Colorado. That, I think, is the absurd result that you get from following the appellate's reasoning here. So I think you can affirm on that basis. At one point a couple minutes ago, I think you made a reference to removing the man-made improvements, and I thought you made a reference to a Supreme Court decision which suggested that's the appropriate measure for defining meaningfully distinct. What would you point to there? So that's the Miccosukee case. And what the Supreme Court said there is, you know, there have been a lot of alterations to the water flow in South Florida, but it does appear to us that if you were to take out the levees and the pumps, that eventually the waters in this canal, and this was actually not the Lake Okeechobee case, this was they were pumping water from a canal into a wetlands area. The court said it looks like, you know, if you took out all those improvements, the waters would just flow together. But it was unclear and the district court hadn't made any findings on that, and so the Supreme Court did send that back. So you think the test reduced to a simple sentence is that if you took out everything that man did, would the water flow naturally from one area to another? That's right. And I don't think chemical composition of the one water and the other matters, because in the Miccosukee case it was clear that the water in the canals was more polluted than the water in the wetlands. That's why the plaintiff's groups wanted to get a permit in that situation. But that didn't concern the Supreme Court. It was simply, you know, would they flow together naturally? So that seems to be the test. And in the L.A. County case, the court didn't find that it needed to remand on that meaningfully distinct issue because the record was clear enough on that. And I think our record is clear enough on the relationship between the Klamath Strait strain and the Klamath River that this court can affirm on the basis that they're not. From the government's perspective, if we were to agree with your analysis of meaningfully distinct, there's no reason to send the case back to the district court to supplement the record, as your opposing counsel has suggested. That's correct, because the district court focused on the essential factual inquiries in the course of determining that the Klamath Strait strain is a water of the United States. You look carefully at the fact that it acts as a tributary and follows a preexisting hydrologic regime. So there's enough there that you would not need to remand on that. But, again, if the court disagrees, and if the court were to determine that they are meaningfully distinct, then you would go on to the water transfer rule. And let me just avert for a moment to the question of the intervening uses. Again, the ONRC's complaint here was that the Bureau is discharging pollutants from the Klamath Strait strain into the Klamath River, and the focus of the complaint and the notice letter were on the Klamath Strait strain, which everyone agrees is an 8.5-mile drain that leads from just south of the Oregon-California border to the Klamath River. Now, there are additional water transfers upstream. No doubt about it, there's a tunnel through what's called a Sheepy Ridge that leads from Tule Lake to Lower Klamath Lake, but that's a separate water transfer because that as well is taking waters of the United States and conveying them to another water of the United States, Lower Klamath Lake. This water transfer, if you need to get to the water transfer issue at all, goes from Lower Klamath Lake, the north end of the lake bed, to the Klamath River. And there is no evidence of any intervening uses for that water transfer. Intervening uses is when, as EPA explained, someone withdraws water from the water transfer and uses it for a municipal, commercial, or industrial purpose and puts it back in with additional pollutants. Well, that person shouldn't get around the permit requirement. The permit requirement should apply there. So EPA was just making sure that the water transfer rule was not misused. So there's no evidence in this record or no evidence that the Bureau or any of the users add more pollutants to the water than existed at the beginning of the transfer? Is that what you're saying? I'm saying that there's no evidence. I know they didn't take it out and use it and put it back, but I'm asking a different question. It is possible that there could be runoff from fields or irrigation return flows that go into the ____. But those are exempted. They are, but also they don't fit the definition that EPA ____. Right. The person that you're suing has to be the person who added the pollutants. That's correct. So I'm asking, is there any evidence in the record that the defendants in any way added pollutants other than the ones that existed at the beginning of the transfer? No. The Bureau is the only defendant, and it adds no pollutants. It simply has pumping stations, but they don't add any pollutants. It's just moving or conveying the water, and that's exactly what the water transfer rule is. I want to ask a couple of factual questions just to be sure that the record is clear. As I understand it, the ONRC's original letter characterized the Klamath project here as an, in quotes, an earthen canal with two relift pumping stations, in quotes, that was, in quotes, built in 1941 and is 8.5 miles long. That's at ER 95. So from your perspective, is it your understanding that the plaintiffs in this case are viewing the project here as an 8.5-mile-long earthen canal? Is that right? Correct. Okay. And in addition to that, as I understand it, ONRC conceded with respect to its original position that, in quotes, if the short length is believed, then dependent may qualify for the transfer rule exception. That's at SDR 71. If that is accurate, what implications, if any, do you think that has on our review of the case? Well, it simply shows that ONRC's theory of intervening uses would require you to find that the water transfer is something more than the 8.5 miles. You have to go up to the Sheepy Ridge Tunnel and so forth. And we believe that you just can't link a bunch of water transfers together. Do you believe that what I just read, and just for a moment assume that this is a correct statement from the record, is ONRC in any way stopped or are they bound in any way by this concession? I think so. I mean, it's how they pled their case. ONRC, to be sure, has always noted that the water that comes into the 8.5-mile canal contains pollutants from up above, but it has framed its case as being about the Calamit Strait's drain and whether it needs an NPDES permit because it discharges. My primary focus here is that at least arguendo, they're saying that the project is 8.5-mile long, and if that is the position, they seem to agree that the water transfer rule applies.  Is that correct? And they say it's invalid, but I think, yes, that is a correct statement. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Nick Jacobs, and I'm here for the Klamath Basin Water Users Protective Association. I think that Mr. Sheldon did a great job of outlining our case and answering your questions, but I do want to clarify a couple of points. The first is that in the Bureau's motion for summary judgment, it clearly laid out the argument that the Klamath River and the Klamath Strait's drain are not meaningfully distinct. And in a perfect world, I wish we had a single more sentence in this district court opinion that simply concluded with, and therefore, the Klamath Strait's drain and the Klamath River are not meaningfully distinct. Was it an argument made? Absolutely. In fact, I think it was the primary argument made, the water transfer rule being the secondary argument, because, as Mr. Sheldon notes, you don't get to the water transfer rule if this Court finds that the two water bodies at issue are not meaningfully distinct. If this is such an easy answer, why do you think the district court just didn't adopt it? So I asked that question. I was not involved in the trial court proceedings, but I asked my partner at the firm who was, and the answer that I got was that essentially the water transfer's rule was new and shiny, and we got a great opinion, and it didn't make a lot of sense to go back to the court and try and fix that. No, I understand why you didn't go back. I'm trying to figure out why a district judge would make a lot of work on this one when you think it's an easy issue. I agree. But I think that Mr. Sheldon has set forth, and I think the court has also indicated that the record here is very thorough, and this is a case that has been going on for 17 years. It was filed in 1997 in December. I was taking my first-year law school exams at that time. It's a long case, and I think that a remand is inappropriate probably in this context when the record is so thorough. You could literally make it a career case. Yeah, absolutely. Well, these water cases are like that. Oh, yeah. And so also that distinguishes our case from the Mikosuke case, in which the Supreme Court had before it some legal issues but didn't have the fully developed factual record. That's why they sent it back down. A couple of comments about the Catskills case, Judge Karras' case. You know, that's a 45-page double column, you know, really impressive to me on a first read decision. But as I read it again and again and again, it took me several times to get it. You know, ultimately I think that case comes down to Judge Karras simply disagreeing with EPA and having an opinion that the rule could have been done differently and better, and that's not what Chevron deference is about. I felt that the 11th Circuit in Friends of the Everglades did a much more accurate justice to what Chevron deference is about. And I also found that Judge Karras' criticisms, and there were many, you know, often sort of rang hollow. One of them in particular was EPA has argued all along that, look, there's a certain framework here for NPDES permitting of point sources, but states are also empowered to regulate non-point sources, and even to regulate point sources to a degree that is more thorough in nature than is required by federal law. And Judge Karras said, well, that's illusory. Okay, what if you have an upstream polluter who refuses to enforce NPDES permits to the degree that is desired by a downstream state? Then you've got a situation in which, you know, it doesn't apply. And I think that was the whole impetus for the New York amicus brief. I don't know the exact circumstances there, but I believe they feel that they are being polluted by an upstream state that is beyond their control. The problem is that invalidating the water transfer rule does nothing to solve that situation. If the water transfer rule is invalidated, and if, in fact, various water transfers now require NPDES permits, there is nothing to force a bad actor state, so to speak, to have strict NPDES permits for water transfers either. And so I don't think at all that undercuts EPA's rationale that, hey, states are always free to enforce more rigorous water quality standards. And in that regard, you've seen the amicus briefs. There are amicus briefs written by dozens of states or signed by dozens of states in support of the water transfer rule and in support of the Bureau in our case. This is an issue of major concern to the states, especially the western states, that rely heavily on water transfers and that will be significantly impacted by a new rule 40 years after, more than 40 years after the Clean Water Act was adopted, that would suddenly require water transfers to be the subject of NPDES permits. Great. And so the Johnson v. Riverside health care case is the case in the Ninth Circuit that says, when you've got a lower court decision that didn't quite, that came to the right conclusion but didn't quite get the analysis right or didn't even do the analysis, the Ninth Circuit can step in and affirm the decision for the right reasons. So with that, I'll rest. Thank you. Thank you. And we'll hear from Plaintiff with rebuttal. Yes, Your Honors. I think on the issue of meaningfully distinct, the lower court never used those words at all in its opinion. And if you look through Plaintiff's papers, you would see that we were reserving that issue because we believed it was a complex factual issue that should be having a trial on it. So really the only issue on meaningfully distinct is that it, the Klamath River turns out to be a tributary of the waters of the United States. And as to Mr. Shilton's issue about other rivers like the Green River needing to get a permit, the key thing is you have a point source that you have to look at. The Green River does not have a point source with it that I'm aware of. So that's what makes the Klamath Drain unique is these point sources. If it was all torn down, shall we say, retro back to 1890, then you're right. There would be no manmade pollution in the river. There would be, the river would have its natural course. But that's not what Congress wanted out of the Clean Water Act. And so I really don't think you should try to second guess a factual record that's not there just on the basis of this tributary issue. Finally, or at least. Does that mean you want us to get to the water transfer rule? Do we have a little time to talk about that, Your Honor? This question is fairly simple. I mean, by telling us that we can't properly reach the conclusion about meaningfully distinct, that seems to scream out, hence, we need to deal with an issue that otherwise might not have to be dealt with. Certainly, Your Honor. So the answer to that question is yes. Yes. And I know we've spent a bunch. May I speak to that for a few moments? Very briefly. Yes. The two courts that have ruled on the water transfer rule do not have the controlling case law that you have, which suggests that any exclusions for a category of point sources, for a class of point sources from the Act, can only be done by Congress. And this Court has said that repeated times. Of course, the theory is that this isn't an exclusion. Yes, that's correct, even though it sits in the exclusionary of the CFR. And it was asked during commenting period to be put in the definition section. Seems to be a much more reasonable spot for it because they're defining the word addition differently. But no, EPA said it had to go into the exclusion section of the regulation. So it really is an exclusion. The question is, does EPA have the ability to go underneath the statute to a secondary term to try to create a definition for it where it can say it's just happenstance that it really became an exemption for a class of pollutants. The final issue, I may add, is that the Bureau itself in 1975 suggested that they were going to be getting a Clean Water Act permit as the law stood in 1975. And that is on excerpt of record page 150. And so EPA has said for a period of time, we've always said these kind of waters don't need to get a permit. But somehow they never transmitted that to BOR because BOR did in the early times of the act believe they needed to get a permit. Did they apply for one? I'm sorry? Did they get one? Did they try to get one? The record, they did try to get it. It says that they sent in an application on February 21, 1974. And then it was after this expansion, which would transfer many more waters of much volume, they said they were going to be applying for a permit. And let's say that that's accurate. What impact, if any, should that have on our consideration of this case? Well, it really actually goes to the change of position that EPA has had. But you're not contending estoppel. You're not contending there's an estoppel here, are you? No, Your Honor. What you're really saying is at one point they interpreted the act as perhaps requiring a permit. And not only BOR did, but EPA did also. Okay. And that's something we can take into account. But people change positions all the time. And sometimes people will apply for permits to head off lawsuits or because they misread the act. I think estoppel is way too long in the past, Your Honor. I'm not going to rely on that. Okay. So we know at least for whatever value it is that somebody at one point thought they might want a permit. Yeah, and I think the fact is both agencies, EPA and the Bureau, together in 1974 believed they needed to get a permit. So, again, I would recommend a remand. I don't believe the record's at all developed and meaningfully distinct. And I don't think this Court should wander off on those unknown and uncharted waters just to suggest that a tributary, because one last thing. You're suggesting those waters are not navigable for us. I'm sorry, Your Honor? You're suggesting that we shouldn't navigate those waters because they're not navigable. You've been reading the Southern District for too long, I think. It is remarkable to me that you feel that this record is so paltry after it having been filed in 1997. This is ridiculous. I mean, come on. Well, Your Honor, I think the reading of recent – Thousands and thousands and thousands of pages of materials in this case. Does the District Court have to specifically focus on the words meaningfully distinct? I think it has to do more than just have a finding that it was just a tributary, because the other thing I may add is Headwaters' case decided that a tributary could need a point source, as did Justice Kennedy in Rapanos, said there's no – the two could go hand in hand. And as such, a tributary could have to get a point source, a permit, because it is a point source. I think that's the bottom line we have here is we're working with a point source, Your Honor. And one – I'm sorry. The last thing is on the complaint that I think you said basically was eight and a half miles, and that was all we ever talked about. On the record page 88, it says that – What, this is ER or – No, this is the complaint, Your Honor. Oh, the complaint, okay. Yes, that basically that it is all of the canals, and the reason the Klamath Straits drain was mentioned, it was the end canal going into the Navajo River, the Klamath River. So it wasn't only the drain itself, although the drain was the ultimate collector and transporter of all that polluted water. Is the notice aimed simply at the Klamath Canal? I'm sorry. Is the notice, but not the complaint, aimed only at the canal? I'd have to look at the notice again, Your Honor. I think we focused on the drain in all honesty. I think so, too. That's why I asked the question. Because that was where it actually did the discharge and the harm to the Navajo water. Thank you. We thank all counsel for your helpful arguments in this complicated case. Thank you. The case is submitted. We're adjourned.
judges: Clifton, Smith, Hurwitz